IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UTHA HELLMANN-BLUMBERG,           )
                                  )      2:12-cv-00286-GEB-DAD
              Plaintiff,          )
                                  )
         v.                       )      ORDER DISMISSING
                                  )      DISCRIMINATORY IMPACT CLAIM
UNIVERSITY OF THE PACIFIC, a      )      AND DENYING MOTION FOR
California Corporation,           )      PARTIAL JUDGMENT ON THE
                                  )      PLEADINGS
              Defendant.          )
_____)

Defendant moves under Federal Rule of Civil Procedure ("Rule") 12(c) for partial judgment on Plaintiff's discriminatory impact claim, which is alleged under Title VII of the Civil Rights Act of 1974, 42 U.S.C. § 2000e et seq., and Plaintiff's state contract claims. Defendant argues its motion should be granted because Plaintiff has not administratively exhausted her disparate impact claim and state courts have exclusive jurisdiction over her contract claims under California law.

## I. LEGAL STANDARD AND REQUEST FOR JUDICIAL NOTICE

"[A] motion for a judgment on the pleadings is a motion for a judgment on the merits. Since [D]efendant alleges only jurisdictional grounds for dismissal, the proper course is to consider the motion as one to dismiss for lack of subject matter jurisdiction." Collins v. Bolton, 287 F. Supp. 393, 396 (N.D. Ill. 1968) (citation omitted). Thus, Defendant's "motion [is to be treated] as if it had been brought under

1

Rule 12(b)(1)." <u>San Luis Unit Food Producers v. United States</u>, 772 F. Supp. 2d 1210, 1218 (E.D. Cal. 2011) (alteration in original) (internal quotation marks omitted) (quoting 5C Charles Allen Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1367 (3d ed. 2004)). Rule 12(b)(1) challenges to a court's subject matter jurisdiction "can be either facial or factual." <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000). Facial challenges attack the pleadings as insufficient to invoke federal jurisdiction; factual challenges contest the truth of the jurisdictional pleadings. <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack on jurisdiction, a court "may look beyond the complaint" to evaluate jurisdictional facts that are not intertwined with the merits of the action without converting the motion into a motion for summary judgment. <u>White</u>, 227 F.3d at 1242; <u>Trentacosta v. Frontier Pac. Aircraft Indus.</u>, 813 F.2d 1553, 1558 (9th Cir. 1987) (collecting cases).

Defendant's motion includes its request that the Court take judicial notice of the following two documents, which Defendant argues support its argument that Plaintiff's discriminatory impact claim should be dismissed: Plaintiff's EEOC "Charge of Discrimination" ("EEOC Charge"), and Plaintiff's supplement to her EEOC Charge ("Supplement"). Plaintiff opposes this request arguing: "The documents are hearsay for which no foundation for any exception to the hearsay rule has been shown." (Opp'n Req. Judicial Notice 1:21-25, ECF No. 20.)

Defendant counters the statements contained in the EEOC Charge and Supplement are not hearsay since they are not being offered for their truth, but for the limited purpose of showing that Plaintiff failed to exhaust her administrative remedies. (Reply 6:10-13, ECF No. 22.)

Plaintiff's hearsay objection is overruled in light of the response to the objection, and therefore, Defendant's request for judicial notice for the limited purpose for which the documents are offered is granted. Anderson v. Holder, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("[A court] may take judicial notice of records and reports of administrative bodies." (internal quotation marks omitted)); Gallo v. Bd. of Regents of Univ. of Cal., 916 F. Supp. 1005, 1007 (S.D. Cal. 1995) ("[T]he Court may consider both the EEOC right to sue letter and the EEOC charge, either as referenced in the complaint or as public records subject to judicial notice.").

## II. BACKGROUND

The following factual background is drawn from allegations in Plaintiff's complaint and the judicially noticed documents. Defendant, "a California Corporation that owns and operates a university," employed Plaintiff as a tenure-track Assistant Professor in its Department of Chemistry until she was discharged. (Compl. ¶¶ 6-7, ECF No. 1.) Plaintiff's "gender is female." (Id. at ¶ 11.) During the 2006-2007 academic year, Plaintiff "sought promotion and appointment with tenure in the Department of Chemistry." (Id. at ¶ 12.)

"In a letter dated April 15, 2007, Donald De Rosa, President of [Defendant], denied tenure and promotion to [Plaintiff]." (Id. at ¶ 16.) "On August 31, 2008, [Defendant] terminated [Plaintiff]'s employment." (Id. at ¶¶ 16-17.)

Following her termination, Plaintiff "filed a charge of sex discrimination against [Defendant] with the United States Equal Employment Opportunity Commission (EEOC)," and she received a right to sue letter. (Id. ¶ 21-22.) Plaintiff's EEOC Charge of Discrimination shows she checked the boxes for "discrimination based on" "sex" and

3

"age." (Req.  Judicial Notice, Ex. A, ECF No. 15-1.) Plaintiff's EEOC

Charge states:

> In mid-April 2007, I received a letter from
> Provost Phillip Gilbertson stating that my tenure
> and promotion had been denied, despite . . . my
> positive evaluations and a unanimous recommendation
> for tenure and promotion from the Evaluation
> Committee. . . . I believe I have been
> <u>discriminated against because of my sex</u>, Female, in
> violation of Title VII . . . .

(<u>Id.</u> (emphasis added).) Further, Plaintiff later sent the EEOC a letter

updating the EEOC on "two new developments," which includes the

following:

> 1. In my original complaint I stated that I
> had never received any reasons why I was denied
> tenure (which is the same as termination of my
> position in the summer of 2008) or promotion to
> associate professor. The reasons were finally
> delivered on December 21, 2007 together with a
> letter citing an improbable cause for their 4-
> months delay. Several of the reasons are not
> admissible under university rules because they were
> not backed by the evidence collected in the
> official document binder. <u>I believe they come from
> secret conversations of certain university
> officials with one or two individuals with personal
> or professional animosity toward me.</u> The last
> paragraph of the letter dated August 23, 2007, and
> delivered on December 21, 2007, cites "my response
> to proffered guidance in research and scholarly
> activities" as a major reason for denial of tenure
> and promotion. <u>I believe this stems from secret
> complaints of a male professor loosely associated
> with our department who insisted that (female)
> assistant professors pay regular visits to his
> office for "mentoring"</u> even if he had no experience
> in their research area (as in my case). I was also
> reluctant to comply because this individual had
> previously shown lack of integrity and made me
> uncomfortable. I am attaching the letter dated
> August 23, 2007, and a letter I sent to the
> committees when I forwarded the provost's
> correspondence. <u>I believe that the provost's letter
> reflects an arbitrary decision by individuals
> (President and Provost with help from an interim
> dean) which feel that they have the power to make
> such decisions and which are neither qualified to
> judge my accomplishments nor inclined to consider</u>

1            <u>the evidence</u>, the committee reports, or favorable
2            recommendations from faculty committees.

3                 2. On Tuesday, January 15, 2008, the hiring of
replacement professors for me and for the other
women from the chemistry department who was
terminated last April under similar circumstances
was announced. The fact that both candidates are
male seems to support <u>my suspicion that
discrimination based on gender (as well as
discrimination based on age) played an important
role in the Provost's and President's decision to
terminate my position</u> despite favorable
recommendations from faculty committees.

9 (Req. Judicial Notice, Ex. B, ECF No. 15-2 (emphasis added).)

10       After receiving a right-to-sue letter from the EEOC, Plaintiff

11 sued Defendant asserting, <u>inter alia</u>, breach of contract and implied

12 covenant claims, and discrimination claims under two different theories:

13 disparate treatment and disparate impact.

14                       **III. DISCUSSION**

15    **A.   Disparate Impact Claim**

16       Defendant argues the Court lacks subject matter jurisdiction

17 over Plaintiff's disparate impact claim since Plaintiff did not exhaust

18 applicable administrative remedies concerning this claim. Defendant

19 contends the "Charge of Discrimination" Plaintiff filed with the EEOC

20 failed to raise a disparate impact claim. Specifically, Defendant

21 argues: "[Plaintiff's EEOC] Charge . . . gave the EEOC notice to

22 investigate claims for intentional gender and age discrimination under

23 a disparate treatment theory, but the Charge did not give the EEOC

24 notice to investigate any facially neutral employment policy with a

25 disproportionately discriminatory impact on a protected class under an

26 impact theory." (Mot. Partial J. Pleadings 9:24-28, ECF No. 14.)

27       Plaintiff counters that she sufficiently exhausted her EEOC

28 administrative remedies on her disparate impact claim. Specifically,

Plaintiff argues her disparate impact claim is "'reasonably related to her failure to promote [disparate treatment] claim'" contained in her EEOC Charge and Supplement, such that her disparate impact claim was also sufficiently exhausted. (Opp'n 5:27-6:2 (quoting <u>Brown v. Coach Stores, Inc.</u>, 163 F.2d 706, 712 (2d Cir. 1998)).)

"Liability in a disparate-treatment case depends on whether the protected trait actually motivated the employer's decision." <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 52 (2003) (alteration and internal quotation marks omitted). "By contrast, disparate-impact claims involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." <u>Id.</u> (internal quotation marks omitted).

"In order to establish subject matter jurisdiction over [a] Title VII claim, [a] Plaintiff [is] required to exhaust her administrative remedies. . . . by filing a timely charge with the EEOC . . . thereby affording the agency an opportunity to investigate the charge." <u>B.K.B. v. Maui Police Dept.</u>, 276 F.3d 1091, 1099 (9th Cir. 2002) (citing 42 U.S.C. § 2000e-5(b)). "Allegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are <u>like or reasonably related to the allegations contained in the EEOC charge</u>." <u>Id.</u> at 1100 (emphasis added) (internal quotation marks omitted). "Subject matter jurisdiction extends over all allegations of discrimination that [would fall within the scope of] an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." <u>Id.</u> (internal quotation marks omitted).

The issue here is whether Plaintiff's allegations contained in her EEOC Charge and Supplement are "like or reasonably related to" her discriminatory impact claim, such that the EEOC had an "opportunity to investigate" her specific claim. Id. at 1099–1100. "[A]n administrative charge that only alleges a discrimination claim based on disparate treatment is insufficient to exhaust a claim for disparate impact . . . ." De Los Santos v. Panda Express, Inc., No. C 10-01370 SBA, 2010 WL 4971761, at *4 (N.D. Cal. Dec. 3, 2010) (collecting cases); accord Goethe v. Cal. Dep't of Motor Vehicles, No. 2:07-cv-01945-MCE-GGH, 2008 WL 489554, at *6 (E.D. Cal. Feb. 20, 2008) ("Because Plaintiff pled only facts that would reasonably have led to an investigation of disparate treatment or retaliation, he failed to exhaust his administrative remedies, and this Court lacks jurisdiction over Plaintiff's . . . disparate impact claim."); cf. Brown v. Puget Sound Elec. Apprenticeship & Training Trust, 732 F.2d 726, 730 (9th Cir. 1984) (reasoning an EEOC "investigation of whether [plaintiff]'s application was rejected as the result of disparate impact would not have encompassed her subsequent claim that . . . she was subjected to intentional sex discrimination," and holding plaintiff "fail[ed] to exhaust her administrative remedies before the EEOC[,] preclud[ing] the presentation of her dis[parate] treatment claim in federal court").

Here, Plaintiff checked boxes in her EEOC Charge that show she believed that she had been subjected to discrimination based on "sex" and "age." (Req. Judicial Notice, Ex. A.) In the factual-statement section of her EEOC Charge she states: "I believe I have been discriminated against because of my sex, Female, in violation of Title VII." (Id. (emphasis added).) Plaintiff states in her EEOC Supplement that she believed she was fired because of evidence that "come[s] from

secret conversations of university officials with one or two individuals
with <u>personal or professional animosity</u> toward me. . . . I believe this
stems from <u>secret complaints</u> of a male professor loosely associated with
our department . . . ." (Req. Judicial Notice, Ex. B (emphasis added).)
Further, Plaintiff states in her Supplement:

> [T]he hiring of replacement professors for me and
> for the other women from the chemistry department
> who was terminated last April under similar
> circumstances was announced. The fact that both
> candidates are male seems to <u>support my suspicion
> that discrimination based on gender</u> . . . played an
> important role in the Provost's and President's
> decision to terminate my position despite favorable
> recommendations from faculty committees.

(<u>Id.</u> ¶ 2.) These allegations fail "to identify any neutral employment
policy that would form the basis of a disparate-impact claim." <u>Pacheco
v. Mineta</u>, 448 F.3d 783, 792 (5th Cir. 2006). Plaintiff did not allege
or even allude to "any specific policy or procedure" that adversely
affected her gender as a group. <u>Goethe</u>, 2008 WL 489554, at *6. Instead
of a facially neutral institutional policy or procedure, Plaintiff
alleges her firing was the result of "secret conversations of certain
university officials with one or two individuals with personal or
professional animosity toward me." (Req. Judicial Notice, Ex. B.)
Plaintiff's allegations of "personal or professional animosity" are
consistent with intentional discrimination motivated by gender, rather
than a "neutral employment policy[, which] is the cornerstone of any
EEO[C] disparate-impact investigation, since the EEO[C] must evaluate
the policy's effects on protected classes and any business
justifications for the policy." <u>Pacheco</u>, 448 F.3d at 792. Therefore,
Plaintiff has not shown that she exhausted her administrative remedies
as to her disparate impact claim. For the stated reasons, Plaintiff's

disparate impact claim is dismissed for lack of subject matter jurisdiction.

**B.   Contract and Implied Covenant Claims**

Defendant argues partial judgment in its favor should be entered on Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing because California Code of Civil Procedure § 1094.5 deprives federal courts of jurisdiction over these claims. Defendant argues: "Plaintiff's contract and implied covenant damage claims are barred by her <u>failure to exhaust her exclusive judicial remedy</u> of a [state court] mandamus action." (Mot. J. Pleadings 14:9–11 (emphasis added) (citing various state cases).)

California state courts have interpreted section 1094.5 to prescribe that "mandamus review" in California Superior Court "is the exclusive remedy" for judicial review of university decisions denying "academic tenure [to] a college professor." <u>Pomona Coll. v. Superior Court</u>, 45 Cal. App. 4th 1716, 1720 (1996). However, "[b]arring only exceptional circumstances, or explicit [federal] statutory requirements, resort to a federal court may be had without first exhausting the judicial remedies of state courts." <u>Lane v. Wilson</u>, 307 U.S. 268, 274–75 (1939) (internal citations omitted); <u>accord</u> <u>BNSF Ry. Co. v. O'Dea</u>, 572 F.3d 785, 788 (9th Cir. 2009) ("A state cannot confer rights upon private parties and require that litigation between those parties must be confined to the courts of the state itself."); 17A Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 4233 Exhaustion of State Remedies (3d ed. 2001) ("A litigant must normally exhaust state 'legislative' or 'administrative' remedies before challenging the state action in federal court. He need not normally exhaust state 'judicial'

remedies." (footnote omitted)). Since Defendant has not shown this portion of its motion should be granted, it is denied.

### IV. CONCLUSION

For the stated reasons, Plaintiff's disparate impact claim is dismissed, and the remainder of Defendant's motion (ECF No. 14) is denied.

Dated:  March 29, 2013

GARLAND E. BURRELL, JR.
Senior United States District Judge