UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UTHA HELLMANN-BLUMBERG, | No.  12-cv-00286-TLN-DAD |
| Plaintiff, | |
| v. | **ORDER** |
| UNIVERSITY OF THE PACIFIC, a California Corporation, | |
| Defendant. | |

This matter is before the Court on Utha Hellman-Blumberg's ("Plaintiff") Motion to Strike Defendant's Rebuttal Expert Disclosures.  (Mot. to Strike Def.'s Labor Economist and Academic Scientist and Officer of Universities, ECF No. 32.)  Defendant University of the Pacific ("UOP") has filed an opposition to the motion.  (Def. Univ. of the Pacific's Opp'n to Pl.'s Mot. to Strike the Univ.'s Rebuttal Expert Disclosures, ECF No. 47.)  The Court has carefully considered Plaintiff's motion and reply as well as the arguments presented in UOP's opposition.  For the reasons set forth below, Plaintiff's Motion to Strike is DENIED.

I.       FACTUAL AND PROCEDURAL BACKGROUND

On February 2, 2012, Plaintiff filed a Verified Complaint against her former employer, UOP, alleging gender discrimination in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C, § 2000e-2(a), the California Fair Employment and Housing Act, California Government Code § 12940 *et seq.*, 12965 (d)(1), as well as breach of contract and breach of the covenant of good faith and fair dealing.  (Verified Compl. for Emp't Discrimination, ECF No. 1 at ¶¶ 1, 23–36.)

The following allegations are contained within the Plaintiff's Verified Complaint. Plaintiff was employed by UOP as a tenure-track assistant professor in the Department of Chemistry from May 9, 2001 until she was denied promotion and tenure and subsequently terminated on August 31, 2008.  (ECF No. 1 at ¶¶ 7, 17.)  Plaintiff states that she satisfactorily performed her work duties and met or exceeded the standards for promotion and tenure, and that the Department of Chemistry Evaluation Committee, the Chemistry Department Chair, and the UOP Promotion and Tenure Committee all recommended that she be promoted.  (ECF No. 1 at ¶¶ 10, 13–15, 20.)  The President of UOP, Donald DeRosa, holds the final authority to grant promotion and make appointment with tenure.  (ECF No. 1 at ¶ 9.)  In a letter dated April 15, 2007, DeRosa denied Plaintiff tenure and promotion.  (ECF No. 1 at ¶ 16.)  Plaintiff alleges that the denial was due to her gender and that DeRosa failed to implement an adequate system to regulate, monitor, and eliminate discriminatory practices at UOP.  (ECF No. 1 at ¶ 16.)  Plaintiff further alleges that DeRosa allowed stereotypical views about women to influence the promotion and tenure process and promoted male colleagues with similar or inferior qualifications.  (ECF No. 1 ¶ at 20.)

UOP denies the allegations and has filed seventeen affirmative defenses alleging that UOP's conduct was a proper exercise of discretion and/or justified by legitimate, non-discriminatory business purposes.  (Def. Univ. of the Pacific's Answer to Pl. Utha Hellman-Blumberg's Verified Compl. for Emp't Discrimination, ECF No. 8 at 2–6.)

This Court entered a Pretrial Scheduling Order requiring disclosure of expert witnesses by February 9, 2013 and disclosure of rebuttal witnesses by March 9, 2013.  (ECF No. 10 at 2.)  Plaintiff timely disclosed six expert witnesses: retained expert Margo Rich Ogus, Ph.D., and non-retained experts Shelia O'Rourke, J.D., Silvio Rodriquez, Ph.D., David E. Keefe, Ph.D.,

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Fred Muskal, Ph.D., and Greg Camfield, Ph.D.  (Pl.'s Expert Witness Disclosure, ECF No. 48-2 at 1; ECF No 48-3 at 1–3.)  UOP did not disclose any witnesses in support of its affirmative defenses by the February 9, 2013 deadline.  UOP subsequently disclosed two rebuttal expert witnesses on March 8, 2013.  (Def. Univ. of the Pacific's Disclosure of Rebuttal Expert Witnesses, ECF No. 32-1 at 1–2.)  Plaintiff has moved this Court to strike UOP's two rebuttal witnesses contending that they are not proper rebuttal witnesses because their testimony supports UOP's case-in-chief and that they were therefore not timely disclosed.  (ECF No. 32 at 4–7.)  Additionally, Plaintiff requests that the Court strike UOP's answer in its entirety or alternatively strike UOP's second, third, fourth, tenth and twelfth affirmative defenses.  (ECF No. 32 at 2.)  Lastly, Plaintiff requests that the Court order a jury instruction stating that due to UOP's failure to timely disclose expert witnesses the jury may disregard all of UOP's expert witness testimony and that the Court order UOP to pay Plaintiff's costs and impose monetary sanctions.  (ECF No. 32 at 3.)

II.      STANDARD

        Under Federal Rule of Civil Procedure 26(a)(2)(A), a party must disclose the identity of any expert witness it may use at trial.  Rule 26(a)(2)(D) requires parties to make these disclosures at the time and in the sequence that the court orders.  Rule 26(a)(2)(D)(ii) states that rebuttal testimony must "solely contradict or rebut evidence on the same subject matter."  Rebuttal testimony is proper as long as it addresses the same subject matter that the initial experts address and does not introduce new arguments.  *See Perez v. State Farm Mut. Auto Ins. Co.*, No. C-06-01962, 2011 WL 8601203, at *6 (N.D. Cal. Dec. 7, 2011); *Gen. Elec. Co. v. Wilkins*, 1:10-cv-00674 LJO JLT, 2012 WL 5398407, at *2–3 (E.D. Cal. Nov. 2, 2012).  The purpose of rebuttal evidence is "to explain, repel, counteract, or disprove the evidence of the adverse party. . . ." *United States v. Delk*, 586 F.2d 513, 516 (5th Cir. 1978) (emphasis omitted) (quoting *Luttrell v. United States*, 320 F.2d 462, 464 (5th Cir. 1963)); *see also Greentree Elec.'s Corp.*, 176 NLRB 919, 927 n.24 (1969) (stating that the purpose of rebuttal is to "introduce facts and witnesses appropriate to deny, explain or discredit the facts and witnesses adduced by the opponent; but not

3

1    any facts or witnesses which might appropriately have been introduced in the case in chief").

2          In the event that a disclosed rebuttal expert is not proper, "Rule 37 'gives teeth' to

3    Rule 26's disclosure requirements by forbidding the use at trial of any information that is not

4    properly disclosed." *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir.

5    2011) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).

6    Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement

7    for disclosure. *Id*. (internal citations omitted).  Rule 37(c)(1)'s exclusion sanction is mandatory

8    unless failure to disclosure is substantially justified or harmless.  Fed. R. Civ. Pro. 37(c)(1).

9    III.    ANALYSIS

10          The Court's Pretrial Scheduling Order required initial expert witness disclosures

11   by February 9, 2013 and rebuttal expert witness disclosures by March 9, 2013.  (ECF No. 10 at

12   2.)  Plaintiff contends that UOP's two rebuttal witnesses' testimony should be stricken because

13   the experts are improperly labeled as rebuttal witnesses and should have been disclosed on or

14   before February 9, 2013 because their reports include *independent* topics that were not discussed

15   by Plaintiff's experts. (ECF No. 32 at 5–7.)

16          Rebuttal experts must restrict their testimony to refuting the theories offered by the

17   other parties' expert.  *See Int'l Bus. Mach. Corp. v. Fasco Indus., Inc.*, No. C-93-20326, 1995 WL

18   115421, at *3 (N.D. Cal. 1995) (finding rebuttal witnesses were proper to the extent they

19   restricted their testimony to subjects addressed by the other parties' experts but would not be

20   allowed to opine on subjects that other parties' experts did not address); *Vu v. McNeil-PPC, Inc.*,

21   No. CV-09-1656-ODW(RZx), 2010 WL 2179882, at *3 (C.D. Cal. 2010) (finding that the phrase

22   "same subject matter" in Rule 26(a)(2)(C)(ii) must be read narrowly to avoid nullifying the

23   distinction between an initial "affirmative expert" and a "rebuttal expert," and that rebuttal

24   testimony should be allowed as long as it is restricted to the same subject matter).  Courts look

25   beyond how a party characterizes its expert (i.e. as a "rebuttal" expert) and consider the substance

26   of the report in determining whether it is narrowly tailored to the subject matter that it purports to

27   refute.  Thus, if the rebuttal expert attempts to add supplemental opinions outside of the existing

28

report, such testimony must be excluded.  *IBM*, 1995 WL 115421 at \*3; *Vu*, 2010 WL 2179882 at

\*3.  Accordingly, a careful analysis of each of the Plaintiff's experts proposed testimony and the

corresponding UOP's experts rebuttal testimony is required to determine if the rebuttal testimony

is proper.

### A. Dr. Borhani's Rebuttal of Plaintiff's Expert Dr. Margo Rich Ogus

Dr. Margo Rich Ogus has a Ph.D. in applied economics and is currently President

of Economic Solutions.  (ECF No. 48-2 at 12.)  Dr. Ogus regularly serves as an expert witness for

both plaintiff and defense counsel regarding economic loss in civil litigation.  (ECF No. 48-2 at

12.)  Dr. Ogus issued a report addressing Plaintiff's economic loss and damages caused by UOP's

alleged discriminatory acts towards Plaintiff.  (ECF No. 48-2 at 6.)  In her report, Dr. Ogus

calculated Plaintiff's economic loss based on two revenue streams.  (ECF No. 48-2 at 6–11.)  The

first revenue stream is compromised of the wages Plaintiff would have received had she been

granted tenure at UOP, promoted to associate professor and eventually promoted to professor.

(ECF No. 48-2 at 6–11.)  The second revenue stream consists of the funds available to Plaintiff

after the discrimination and her termination from UOP.  (ECF No. 48-2 at 6–11.)  This calculation

includes the actual and future expected earnings from Plaintiff's new employment as

"Environmental Scientist B" with the State of California.  (ECF No. 48-2 at 6–11.)

UOP's rebuttal expert G. Hossein Borhani, Ph.D. is a labor economist with

expertise in statistical and economic analysis, including employment discrimination.  (ECF No.

32-1 at 2.)  Dr. Borhani contends that Dr. Ogus failed to take in to account certain labor market

conditions in her report, specifically, potential earnings that someone with Plaintiff's skill level

and expertise can command in the labor market. (ECF No. 32-1 at 31.)  Dr. Borhani analyzed the

American Chemical Society's 2012 Comprehensive Salary and Employment Status Survey and

concluded that chemists with the Plaintiff's level of education on average earn more in

government and industry than in academia.  (ECF No. 32-1 at 33–36.)  Specifically, he found that

the median salary for chemists in academia is $71,000, whereas the median salary for chemists

with a Ph.D. is $121,000 within industry and $112,000 within government.  (ECF No. 32-1 at 33–

36.)  Therefore, Dr. Borhani concluded that while Dr. Ogus's 2014 projection of Plaintiff's

earnings given continued employment with UOP ($70,000) is consistent with labor market data,

the second earning projection within the non-academic labor market ($54,120) is not.  (ECF No.

32-1 at 35–36.)

Plaintiff contends that Dr. Ogus's testimony concerns actual economic loss,

whereas Dr. Borhani's rebuttal opinion focuses on mitigation of damages.  (Reply Mem. in Supp.

of Pl.'s Mot. to Strike Def.'s Labor Economist and Academic Scientist and Officer of Univ.'s,

ECF No. 50 at 2.)  The Court does not find this argument persuasive.  Both experts' reports

address the future earnings available to Plaintiff and must therefore include a calculation of the

losses she will experience as a result of being denied promotion and tenure and her subsequent

dismissal.  "The doctrine of mitigation of damages holds that '[a] plaintiff who suffers damage as

a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those

damages and will not be able to recover for any losses which could have been thus avoided.'"

*Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994) (internal citations omitted).

Accordingly, discussion of the earnings that a person with Plaintiff's qualifications can command

in the job market is relevant to Plaintiff's economic loss and damages.  Thus, the Court finds that

the subject matter of both reports are closely related and that Dr. Borhani was properly disclosed

as a rebuttal expert.

**B.  Dr. Borhani's Rebuttal of Plaintiff's Expert Sheila O'Rouke**

UOP hired Sheila O'Rouke, J.D. in the fall of 2011 to prepare a report about the

representation of women on its faculty.  (ECF No. 48-3 at 7.)  The Plaintiff subsequently hired

Ms. O'Rourke as an expert witness.  (ECF No. 48-3 at 1.)  In her report, Ms. O'Rourke

summarized the representation of women on the faculty at UOP by analyzing headcount, tenure

status, hiring, advancement and retention.  (ECF No. 48-3 at 7.)  O'Rourke reported that overall

women were well represented in tenure-track faculty and in recent faculty hiring.  (ECF No. 48-3

at 7.)  However, she found a gender disparity in the number of tenured faculty and opines that this

disparity reflects hiring decisions made thirty to forty years ago when there were fewer women in

academia.  (ECF No. 48-3 at 7.)  In addition, O'Rourke found that the number of tenured women on faculty was well below that of tenured men in the Natural Sciences.  (ECF No. 48-3 at 15.)

In Dr. Borhani's rebuttal report, he contends that Ms. O'Rouke's report is not the proper mechanism for showing the absence or presence of discrimination under state or federal law.  (ECF No. 32-1 at 9.)  Rather, he purports that Ms. O'Rourke's report is helpful in assisting UOP administrators in their long term planning, but does not provide any reliable statistical evidence regarding the issue of whether or not gender was a negative factor in UOP's tenure decision.  (ECF No. 32-1 at 9–10.)  In support of his assertion, Dr. Borhani included and analyzed a chart that shows forty-five tenure decisions made during the period of April 15, 2000 through August 31, 2010.  (ECF No. 32-1 at 12–14.)  Out of forty-five candidates, twenty-two were female and twenty-three were male; twenty of the twenty-two females were granted tenure and twenty-one of the twenty-three male candidates were granted tenure.  (ECF No. 32-1 at 12–14.)

Plaintiff contends that Ms. O'Rourke's report addresses the demographics bearing on UOP's state of mind, whereas UOP's rebuttal report focuses on causation which is not discussed within Ms. O'Rourke's report.  (ECF No. 50 at 2.)  Thus, Plaintiff argues that Dr. Borhani's report is outside the scope of Ms. O'Rourke's report because it addresses whether statistical evidence supports Plaintiff's allegations of a gender biased policy.  (ECF No. 50 at 2.)  The Court does not find Plaintiff's argument persuasive.  Dr. Borhani's report is explicitly refuting the purported scope and statistical explanatory power of Ms. O'Rourke's report.  (ECF No. 32-1 at 8–13.)  Dr. Borhani first explains why Ms. O'Rourke's report is not reliable statistical evidence and then supports his assertion with what he claims to be a proper statistical analysis.  (ECF No. 32-1 at 8–13.)  Therefore, the report directly addresses and refutes the contentions in Ms. O'Rouke's report, and Dr. Borhani was properly disclosed as a rebuttal expert.

**C. Dr. Pallavacini's Rebuttal of Plaintiff's Experts Drs. Rodriquez, Keefe, Muskal and Camfield**

Plaintiff disclosed four UOP employees as expert witnesses: Professor Silvio Rodriquez, Ph.D., Chair of Plaintiff's Evaluation Committee; Professor David E. Keefe, Ph.D.,

Chair of the Faculty Grievance Committee; Professor Fred Muskal, Ph.D., Chair of Plaintiff's Faculty Grievance Hearing Panel; and Gregg Camfield, Ph.D., Chair of the Promotion and Tenure Committee.  (ECF No. 48-3 at 2–3.)  These four individuals worked at UOP and were all associated with Plaintiff in some way during her employment.  (ECF No. 48-3 at 2–3.)  Generally speaking, they will provide testimony that Plaintiff met or exceeded the departmental standards for tenure and advancement, and that denial of tenure despite unanimous recommendations by UOP's Promotion and Tenure Committee and the Chemistry Department Evaluation Committee violated the policies and procedures of UOP.  (ECF No. 48-3 at 2–3.)

UOP's rebuttal witness, Maria Pallavicini, Ph.D., has served as Provost of UOP since 2011.  (ECF No. 32-1 at 3.)  Dr. Pallavicini's testimony is offered to refute that of Drs. Rodriquez, Keefe, Muskal and Camfield by rendering rebuttal opinion regarding Plaintiff's record of scholarship as compared to that of tenure candidates in the Chemistry and Biological Sciences Departments who were employed in the same time period as Plaintiff.  (ECF No. 32-1 at 3.)

Plaintiff contends that the proffered testimony concerns Plaintiff's qualifications for tenure and promotion, whereas Dr. Pallavicini's testimony concerns one of UOP's affirmative defenses—that it had a legitimate business reason for not promoting Plaintiff.  (ECF No. 50 at 3.)  Again, the Court does not find this argument persuasive.  Dr. Pallavicini, in her capacity as Provost of UOP, has reviewed Plaintiff's qualifications compared with applicants who received tenure.  (ECF No. 47 at 16–17.)  As such, she is able to provide rebuttal opinion to Drs. Rodriquez, Keefe, Muskal and Camfield's opinions that Plaintiff was qualified for tenure.  (ECF No. 47 at 16–17.)  Accordingly, Dr. Pallavicini's testimony directly refutes contentions made by Plaintiff's UOP employee experts, and she is therefore a proper rebuttal witness.

### D.  Distinction between Rebuttal Expert and Defense Case-in-Chief Expert

Lastly, Plaintiff contends that UOP seeks to improperly covert its rebuttal experts into case-in-chief experts.  (ECF No. 50 at 2–4.)  In support, Plaintiff cites *Wong v. Regents of the Univ. of Cal.*, 410 F. 3d 1052, 1061–1062 (9th Cir. 2005), and *Riel v. Warden*, 2010 WL 4628142 *4 at fn. 5 (E.D. Cal 2010).  (ECF No. 50 at 2–4.)  Plaintiff is correct in her contention; however,

8

the fact that evidence may be offered in a party's case-in-chief does not necessarily bar its admission by a rebuttal expert. *See Pakootas v. Teck Cominco Metals, Ltd.*, No. CV-04-256-LRS, 2012 WL 1833390, at *2 (E.D. Wash. Apr. 4, 2012); *see also Companhia De Bebidas Das Americas – Ambev v. The Coca-Cola Co.*, No. 91178953, 2012 WL 1881492, at *2 (TTAB May 2, 2012).  Thus, although UOP could have used the proposed expert testimony of Drs. Borhani and Pallavicini in support of its affirmative defenses, the same testimony may be introduced as rebuttal testimony if it refutes the subject matter of Plaintiff's expert witness testimony.

IV.    CONCLUSION

        For the foregoing reasons, Plaintiff's Motion to Strike UOP's two rebuttal witnesses (ECF No. 32) is DENIED.  Furthermore, because the Court finds UOP's rebuttal witnesses to be proper and therefore timely disclosed, the Plaintiff's request to strike UOP's answer or affirmative defenses two, three, four, ten and twelve due to lack of evidentiary support is also DENIED.  In addition, Plaintiff's requests for a jury instruction, attorney's costs and monetary sanctions are DENIED.

        IT IS SO ORDERED.

DATED:  July 5, 2013

                                                Troy L. Nunley
                                                United States District Judge