UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UTHA HELLMANN-BLUMBERG, | No. 2:12-cv-0286 TLN DAD |
| Plaintiff, | |
| v. | <u>ORDER</u> |
| UNIVERSITY OF THE PACIFIC, a California Corporation, | |
| Defendant. | |

This matter came before the court August 9, 2013, for hearing on plaintiff's motion to compel an expert report, (Doc. No. 58) and motion to compel production of documents identified in defendant's privilege log. (Doc. No. 59.) Attorney Jose Fuentes appeared on behalf of plaintiff Utha Hellmann-Blumberg. Attorney Linda Adler appeared telephonically on behalf of defendant University of the Pacific, ("UOP").

After considering the arguments of the parties set forth in the joint statements of discovery disagreements filed August 2, 2013, (Doc. Nos. 60 & 61), and at oral argument, plaintiff's motions to compel are denied for the reasons explained below.

With respect to plaintiff's motion to compel production of an expert report, plaintiff seeks an order compelling defendant to produce a written report pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure for defendant's rebuttal expert, Maria

1

Pallavicini, Ph. D., who was hired as Provost of UOP in 2010.[1]  (JS (Doc. No. 60) at 2.)  Rule 26(a)(2)(B), however, expressly provides that the written report requirement applies only those witnesses who are "retained or specially employed to provide expert testimony" or "whose duties as the party's employee regularly involve giving expert testimony."  FED. R. CIV. PRO. 26(a)(2)(B).  There is no dispute here that Dr. Pallavicini, as UOP's Provost, is not specially employed to provide expert testimony and her duties do not regularly involve the giving of expert testimony.

Nonetheless, plaintiff argues that Dr. Pallavicini "comes to this case as a complete stranger to the underlying facts and is drawing her opinions from facts supplied by UOP's counsel," and, therefore, she should be "deemed a retained or specially employed expert . . . ." (Id. at 3.)  In support of this argument plaintiff cites the decisions in Meyers v. National R.R. Passenger Corp. (Amtrak), 619 F.3d 729, 734-35 (7th Cir. 2010) and Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011).

However, it has been noted that

> … after Meyers was decided, Rule 26 was amended effective December 2010, to resolve the tension that led some courts to require expert reports of non-retained experts.  The amendments did not alter who was required to file an expert report under the rule and explained that an expert "retained or specially employed" must submit a complete expert report.  Rule 26(a)(2)(B).  However, subpart C was added mandating summary disclosures in place of complete expert reports, of the opinions to be offered by expert witnesses who were not retained or specially employed to give expert testimony. Rule 26(a)(2)(C).  The Committee Notes explain that common examples of experts required to submit summary disclosures include physicians or other health care professionals. Rule 26 (Committee Notes, 2010 amendments).  The amendment attempts to clarify the distinction between an expert retained for the purpose of providing expert testimony and non-retained experts.

Coleman v. American Family Mut. Ins. Co., 274 F.R.D. 641, 645 (N.D. Ind. 2011).

Moreover, both Meyers and Goodman involved testimony from treating physicians who were retained to render expert testimony beyond the scope of the medical treatment they

/////

---

[1]  Plaintiff's employment with UOP ended on August 31, 2008.  (JS (Doc. No. 60) at 2.)

rendered.[2]  See Goodman, 644 F.3d at 826; Meyers, 619 F.3d 733-35.  Here, Dr. Pallavicini was not retained by the defendant to offer expert testimony, but is instead employed by the defendant as Provost of UOP, a job occurring in the normal course of defendant's business.

Finally, at the August 9, 2013 hearing on plaintiff's motion to compel the court noted that there were multiple decisions that appeared to support the conclusion that the plain reading of the rule required no expert report under these circumstances.  Plaintiff's counsel disagreed and asserted that all of those decisions involved expert witnesses who were also percipient witnesses.  Counsel's assertion in that regard, however, is inaccurate.

For example, in Torres v. City of Los Angeles, 548 F.3d 1197 (9th Cir. 2008), the court noted that, "[b]y exclusion, Rule 26(a)(2)(B) contemplates that individuals who are employed by a party and whose duties do not regularly involve giving expert testimony need not provide an expert report."  Id. at 1214.  However, it does not appear from a reading of the opinion in Torres that the expert witness at issue in that case was a percipient witness.

Likewise, in Watson v. United States, 485 F.3d 1100 (10th Cir. 2007), the court reviewed the trial court's failure to require a written report from the clinical director of the United States Department of Justice's Bureau of Prisons' Federal Transfer Center in Oklahoma City, Oklahoma, who testified that, in his opinion, the medical team at FCI El Reno acted professionally and competently.  Id. at 1105-07.  The court found "no violation" of Rule 26(a)(2)(B), however, because "individuals who are employed by a party and do not regularly give expert testimony" are excluded under the rule.  Again, it does not appear from reading the Watson opinion that the expert witness at issue there was a percipient witness.

Moreover, in Bank of China, New York Branch v. NBM LLC, 359 F.3d 171 (2nd Cir. 2004), the appellate court found that the District Court improperly allowed a witness to testify as to matters that were "not a product of his investigation, but rather reflected specialized knowledge . . ."  Id. at 182.  However, the appellate court noted that the testimony may have

---

[2]  The court notes that there may be cause to distinguish treating physicians from other witnesses in evaluating this issue "because treating physicians usually are not employees of the party proffering their testimony."  Allstate Ins. Co. v. Nassiri, No. 2:08-cv-0369 JCM GWF, 2011 WL 2975461, at *9 (D. Nev. July 21, 2011).

3

nonetheless been admissible as expert testimony, but that the plaintiff would have had to comply with Rule 702 of the Federal Rules of Evidence, and Rule 26 of the Federal Rules of Civil Procedure.  Id.  In this regard, the court noted that, "although the defendants were entitled to *notice*, pursuant to Rule 26(a)(2)(A)," that the witness would testify as an expert, "they were not entitled to an *expert report* under Rule 26(a)(2)(B)," because the witness "was not specially retained to provide expert testimony, and his duties as an employee of Bank of China do not regularly include giving expert testimony . . ." Id. (emphasis in original).  Cf. Rent Information Technology, Inc. v. Home Depot U.S.A., Inc., 268 Fed. Appx. 555, 559 (9th Cir. 2008) ("Rent IT properly served its disclosure of experts pursuant to Federal Rule of Civil Procedure 26(a).  Rent IT did not need to submit a written report for any of the four witnesses in question because none of those witnesses were retained or specially employed to provide expert testimony in this case and none of the witnesses' respective duties as Rent IT's employees regularly involved giving expert testimony.")[3]

        Finally, several District Courts have resolved this issue through a plain reading of Rule 26(a)(2)(B), in cases that did not appear to involve percipient witnesses.  See F.D.I.C. v. Anderson, No. 2:11-cv-1061 GEB EFB, 2012 WL 3728160, at *4 (E.D. Cal. Aug. 27, 2012) (in action involving defendant's appraisal of real property for mortgage lending court found that witness was not required to provide a written report because he was not "retained or specially employed to provide expert testimony in this case and his respective duties as a former IndyMac Bank employee do not regularly involve giving expert testimony."); Allsate Ins. Co. v. Nassiri, No. 2:08-cv-0369 JCM GWF, 2011 WL 2975461, at *9 (D. Nev. July 21, 2011) (although expert "was not involved in evaluating and determining the settlement value of the underlying claims during the time that they were being adjusted or litigated" and was instead "assigned the task of reviewing the settlements and determining the amount of Allstate's alleged damages for purposes of testifying in this case" witness was not required to provide a written report because there was no evidence that his duties as an employee regularly involved giving expert testimony); United

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

4

States v. Adam Bros. Farming, Inc., No. CV-00-7409 CAS (RNBx), 2005 WL 5957827, at *4-5 (C.D. Cal. Jan. 25, 2005) (written report not required of employee who had no personal knowledge of the facts because the employee was not specially retained for purposes of giving expert testimony and job duties did not regularly involve giving expert testimony); cf. Greenhaw v. City of Cedar Rapids, Iowa, 255 F.R.D. 484, 488 (N.D. Iowa 2009) ("The Court must apply the Rule as it is written, not as it could have been or should have been written. As written, Rule 26(a)(2)(B) only requires a written report to accompany the identification of an expert witness if the witness is retained or specially employed to provide expert testimony, or is one whose duties as the party's employee regularly involve giving expert testimony."); Navajo Nation v. Norris, 189 F.R.D. 610, 613 (E.D. Wash. 1999) ("The plain language of FRCP 26(a)(2)(B) requires this court to deny Norrises' Motion to Strike. It is uncontradicted that none of the five expert-employee witnesses to be called by the Yakama Nation have been regularly used by it as expert witnesses. Further, there is nothing in the record before this court which establishes that any of these five employee experts were retained or specially employed to provide expert testimony in this case.").

With respect to plaintiff's motion to compel production of documents identified in defendant's privilege log, Rule 26(b)(5)(A) requires a party withholding information based on an assertion of a privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." The log itself should contain at least the following:

> (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.

In re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992) (citing Dole v. Milonas, 889 F.2d 885, 888 n. 3 (9th Cir. 1989)).

At the August 9, 2013 hearing on plaintiff's motion to compel, the undersigned noted that it appeared from a review of defendant's privilege log in this instance that the log

described the nature of the documents, communications, or tangible things not produced in sufficient detail to enable plaintiff to assess the claim of privilege, and that the descriptions appeared to identify documents that implicated a privilege and were, therefore, justifiably withheld. Plaintiff's counsel disagreed and directed the court to the decisions in <u>Flanagan v. Benicia Unified School Dist.</u>, No. CIV S-07-0333 LKK GGH, 2008 WL 2073952 (E.D. Cal. May 14, 2008) and <u>United States v. ChevronTexaco Corp.</u>, 241 F. Supp.2d 1065 (N.D. Cal. 2002). For the reasons set forth below, the court concludes that neither of the decisions relied upon by plaintiff supports plaintiff's motion to compel in this case.

In <u>Flanagan</u>, the party asserting privilege responded to the relevant discovery requests with "blanket objections and boilerplate claims of privilege," and failed to even produce a privilege log. 2008 WL 2073952, at *5. In that context, the court in <u>Flanagan</u> stated:

> Plaintiff has not provided a privilege log in regard to the document requests, and has provided no further explanation to support the privileges claimed in response to the interrogatories, or any explanation beyond that given in the objections cited above. No substantive responses have been given. Even at this time the court and defendants are not aware of what documents have been withheld on account of the asserted privileges. The documents withheld could number one, ten, one hundred-who knows? Defendants' counsel has been compelled to make his plea that no privilege/immunity attaches without recourse to the basic, essential information which would enable him (and the court) to sensibly determine whether particular documents were indeed privileged. Moreover, counsel for plaintiff offered no explanation for the failure to create a privilege log, other than the excuse that a log was premature at the time this discovery was propounded as the status of the operative complaint was in question. Such an argument is without merit, especially in light of the fact that the first amended complaint was filed on October 14, 2007, and the now operative third amended complaint has been on file since February 28, 2008, with an answer on file since March 19, 2008; yet plaintiff has still failed to provide a privilege log. Furthermore, a review of the original complaint in comparison to the first amended complaint indicates no substantive difference between the two in relation to the instant discovery which would have justified an objection on this basis. The court is unwilling to simply ignore the lack of a privilege log, or embark on a further lengthy process to identify and then litigate about potentially privileged documents.

2008 WL 2073952, at *7-8. As noted above, in this case defendant has produced a privilege log which the undersigned has found describes the nature of the documents, communications, or tangible things not produced in sufficient detail to enable plaintiff to assess the claim of privilege.

Therefore, the facts of this case stand in stark contrast to those confronted by the court in Flanagan.

In Chevron, the IRS petitioned the District Court to compel ChevronTexaco Corporation ("Chevron") to produce 180 documents Chevron claimed were protected by the attorney-client privilege and/or by the work-product doctrine. 241 F. Supp.2d at 1068. After conducting an in camera review, the court concluded that "a substantial number of documents that are not insulated by the attorney-client privilege nonetheless fall within the reach of the work product doctrine." Id. at 269.[4]

In the course of analyzing the application of the attorney-client privilege or the work product doctrine to the various documents at issue, the court in Chevron noted that the privilege may apply to "a communication between nonlegal employees in which the employees discuss or transmit legal advice given by counsel." Id. at 1077. The court also noted that "internal communications that reflect matters about which the client intends to seek legal advice are protected." Id. Moreover, the court noted that the work product doctrine "extends not only to work by the attorney but also to litigation preparation work by the party or its representatives." Id. at 1081.

Having read Chevron, the parties' joint statement and listened to the parties' arguments, the court cannot glean any holding from the decision in Chevron that supports plaintiff's challenge to defendant's privilege log here. Moreover, the opinion in Chevron was rendered after the court had already determined that in camera review of the alleged privileged documents was appropriate and had conducted that review. Id. at 1068. In this case the undersigned has not been persuaded that such an in camera review is necessary or appropriate in light of plaintiff's broad and unfocused challenge to what appears to be an adequate privilege log. In this regard, "[a]lthough in camera review of documents does not destroy the attorney-client

---

[4] Before beginning its analysis the court in Chevron noted that the case presented "some difficult questions about the application of privilege" because the client was a corporation, some of the attorneys from whom advice were sought were in-house counsel and the legal advice pertained to a business transaction. Id. at 1069. In contrast, here the legal advice at issue in connection with defendant's assertions of privilege did not pertain to a business transaction.

privilege, it is an intrusion which must be justified. Some threshold must be met by the party contesting the application of privilege before the court examines the materials." In re Grand Jury Investigation, 974 F.2d 1068, 1074 (9th Cir. 1992). "To empower the district court to review the disputed materials in camera, the party opposing the privilege need only show a factual basis sufficient to support a reasonable, good faith belief that in camera inspection may reveal evidence that information in the materials is not privileged." Id. at 1075. See also Vasudevan Software, Inc. v. Microstrategy Inc., No. 11-cv-6637 RS PSG, 2013 WL 1366041, at *2 (N.D. Cal. Apr. 3, 2013) ("VSI is right that an in camera review must have a sufficient factual basis before the court will intrude into the privacy of the party asserting the privilege.").

In this case plaintiff has failed to offer any factual basis, let alone a reasonable good faith belief, upon which to base her challenge to defendant's assertion of privilege.

Accordingly, for the reasons set forth above, plaintiff's July 12, 2013 amended motion to compel (Doc. No. 58) and plaintiff's July 19, 2013 motion to compel (Doc. No. 59) are denied.

IT IS SO ORDERED.

Dated:  August 15, 2013

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.civil\hellmann0286.oah.080913